## Vanesse *v*. Catsburg Coal Co., Ltd., Appellant.

[Marked to be reported.]

159     403
21 SC    56
159     403
34 SC [2] 69

*Negligence—Mines and mining—Master and servant.*

In an action against a mine owner to recover damages for personal injuries caused by the fall of a large piece of coal and slate from the roof of a gangway, it is proper to submit the case to the jury on the question of defendant's negligence where there is evidence that defendant was constructing a tunnel or gangway into his mine; that ordinary care required testing for loose and fractured pieces of coal, and that these should be knocked down; that this work of "making safe" was done under the immediate supervision of defendant's·superintendent; that some of the loose and fractured pieces of coal had not been removed from the part of the gangway in which plaintiff was directed to work, and that one of these pieces fell upon him and injured him.

In such a case it was for the jury to say, not whether the employer had adopted the very best method of constructing a gangway, but whether he had exercised care, according to the circumstances, in providing a gangway which was reasonably safe for his own workmen to work in or pass and re-pass to their work.

*Contributory negligence—Duty of inspection by employee.*

A workman, who sees an apparently safe gangway in a mine, with new timbers just put in place, and knows that under the eye of his employer, an 'experienced miner, a gang of workmen have just finished "making it safe" for him and his fellows, and then is commanded by his employer to work in a particular place in it, is not required to enter upon an inspection of the space between the timbers to determine whether those who had but a short time before tested it had performed their duty with care.

Argued Nov. 14, 1893.. Appeal, No. 187. Oct. T., 1893, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1892, No. 653, on verdict for plaintiff, Desire Vanesse. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for personal injuries.  Before EWING, P. J.

At the trial it appeared that, on July 5, 1892, plaintiff was injured in defendant's mine by the fall of a large piece of slate and coal from the roof of a gangway.  The piece was some two feet thick by six feet long.  The space between the timbers was some twelve feet.

A witness for plaintiff testified: " You have heard the testimony of two witnesses here as to this piece of coal that fell being sheared at both ends? A. Yes. Q. What would be the effect or natural effect of leaving that piece of coal hanging there in the entry? A. Well, to my opinion, the natural effect to leave a piece of coal sheared at both sides, if it don't fall to-day it will fall to-morrow, and before they went to put this timber here, this here should have been taken down. Q. What took it down? A. The weight of the material."

Mr. Jones, the superintendent, testified on cross-examination: " Q. There was a piece of coal hanging between the two timbers? A. Sometimes there would be and sometimes there wouldn't be. Q. There was the piece that fell? A. Yes, sir. Q. And that was sheared at both ends? A. Yes, sir. Q. Weren't these two timbers put there the week before? A. One of them possibly may have been, but there was another going to be put between. Q. And this piece left? A. No; it was cut off possibly at one end, and that day we put another timber in. Q. But that one end was allowed to stay there a whole week? A. Yes, sir."

Dennis Wordley testified on cross-examination: " Q. Is it a rule to leave a piece of coal hanging in that way between the timbers? A. Yes, it's a rule to leave a little, because you can't take it off. Q. What is the reason you can't take it off? A. Because it's too hard. Q. Can't they shear all the coal pretty nearly square? A. Well, it was taken down nearly so. Q. I mean before it fell? A. It is not systematic; you could do so. Q. What's the reason? A. Because it takes too much

labor. Q. Is that the only reason? A. No, it is not the only reason. Q. That is the only reason? A. No, that is not. Q. What is the reason? A. It is only some places about three or four inches and some places six inches hanging over there, and there was a slip in the back of that place, is what made that piece come down; I examined it. Q. Do you mean to say that it is usual to leave a piece of coal two feet thick between two timbers, with its ends sheared off? A. It is not a usual thing to leave a piece two feet thick."

Further facts are stated in the opinion of the Supreme Court. Verdict and judgment for plaintiff for $3,000.

*Errors assigned* were (1, 3) instructions recited in opinion of Supreme Court, quoting them; and (2) entry of judgment.

*D. F. Patterson, A. M. Todd* with him, for appellant.—There is no dispute that Mr. Jones was engaged personally in the work of constructing the gangway, taking the risk in common with the men; that he pursued a plan which his own judgment, founded on his personal experience, approved, which none of the experienced workmen complained of or condemned at the time and which most of them have affirmatively approved; that the plan pursued met the approval of the mine boss; that the mine inspector made no suggestion of change of plan after the accident; and that the work was completed thereafter on the same plan. With these facts undisputed, what disputed fact was there in the case to submit to the jury on the question of negligence?

Even if the jury should find that the plan of knocking down the slate first and putting up the timbers afterward would be a safer and better plan, that would not justify a verdict against appellant for negligence: Sykes v. Packer, 99 Pa. 465; Payne v. Reese, 100 Pa. 301; Augerstien v. Jones, 139 Pa. 183; Titus v. R. R., 136 Pa. 618; Campbell v. Ry., 139 Pa. 522.

In the conduct of such work neither the workman nor the manager does his duty, if he practically closes his eyes and blindly rushes into a danger which might be avoided. Plaintiff, by his own confession, did this; he closed his eyes, relying on the obligation of defendant not to put him to work in a place of danger, although he knew that the work in which they

were all engaged was in its very nature of a dangerous character: Ross v. Walker, 139 Pa. 42; Beittenmiller v. Brewing Co., 22 W. N. 33.

*D. R. Jones,* for appellee.—If there is any substantial doubt as to the facts or the inference to be drawn from them they should be submitted to the jury: Express Co. v. Wile, 64 Pa. 201; McKee v. Bidwell, 74 Pa. 219; Crissey v. R. R. Co., 75 Pa. 83; R. R. v. McKeen, 90 Pa. 127; R. R. v. Foxley, 107 Pa. 538; R. R. v. Peters, 115 Pa. 207; Stager v. R. R., 119 Pa. 70; Canal Co. v. Goldstein & Jacobs, 23 W. N. 496; Baker v. R. R., 95 Pa. 215.

A man is responsible for the consequences of the negligence of his servants in the course of their employment, without regard to their character for care or skill: Ardesco Oil Co. v. Gilson, 63 Pa. 151.

The master's negligence is not a risk of employment: Hays v. Millar, 77 Pa. 238; Ardesco Oil Co. v. Gilson, 63 Pa. 151.

The accident was not due to the negligence of a co-employee: Paulmier v. R. R., 5 Vroom, 153; Fisher v. Hart, 149 Pa. 232.

Appellee was not negligent: Thomas v. Loose, 114 Pa. 48; Johnson v. Bruner, 61 Pa. 58; Canal Co. v. Bentley, 66 Pa. 31; McCully v. Clarke, 40 Pa. 399; R. R. v. Coon, 111 Pa. 440; Gray v. Scott, 66 Pa. 345; Coal Co. v. McEnery, 91 Pa. 185; Schall v. Cole, 107 Pa. 1; Woodward, Graybill & Co. v. Shumpp, 120 Pa. 458; Patterson v. R. R., 76 Pa. 390; Lee v. Woolsey, 109 Pa. 125; Wharton on Negligence, 219; R. R. v. Ogier, 35 Pa. 60; Christman v. R. R., 141 Pa. 613.

This was not an ordinary risk of employment: Johnson v. Bruner, 61 Pa. 58: McKee v. Bidwell, 74 Pa. 218; Crissey v. R. R., 75 Pa. 83; R. R. v. Peters, 116 Pa. 207.

Sykes v. Packer, 99 Pa. 465, is not the same in its controlling facts nor was its record, in the court below, in as good shape as this is. Payne v. Reese, 100 Pa. 301, was a case where the court assumed negligence on part of defendant. In Campbell v. R. R., 139 Pa. 532, the evidence showed that the opening under the rail, the depression in the pavement, its length, breadth and depth were fixed and directed by the city and maintained by the city.

In Ross v. Walker, 139 Pa. 42, there was a foreman.  In

our case there was none. In that case, the employer " gave no directions to the workmen." In this case he did. That case was ruled against the employee on a fact not in this case. In Beittenmiller v. Brewing Co., 22 W. N. 33, the employee knew of the danger.

OPINION BY MR. JUSTICE DEAN, December 30, 1893:

The defendant operates a drift coal mine in the Monongahela valley. For the purpose of enlarging and improving the main drift or gangway, actual digging of coal was temporarily stopped on the 2d of July, 1892. One Coulter had up to that time been mine boss, but on that day he was discharged, and a new boss, Wordley, was employed, who was expected to assume his duties on the 5th of July, but did not actively do so. The main entry or gangway through the mine was at first only wide enough for a single pit-car track; this, while mining was going on before the 2d of July, had been widened, so as to admit of laying two car tracks, thus doubling the capacity of the gangway. This double width was attained by digging out the coal at the sides of the old drift, and by taking down top for height; the permanent safety of the way was secured by timbering with posts at the sides connected with cross timbers at the roof; each set of timbers to stand about six feet from each other in the gangway course. The greater part of the digging, necessary to the widening, had been done before the work of timbering was begun. The method of performing this last was to dig holes for the upright posts, and, when necessary, shear out slightly the sides to get them in place for the roof cross-timbers; the loose or fractured material, consisting of coal, bone and slate on the sides and top, outside of or between the sets of timbers, was then knocked down and left on the floor of the gangway to be shoveled into the pit-cars and hauled to the dump. The workmen setting the timbers did nothing after knocking down that which was not solid; when this was done, they proceeded to place in position a new set of timbers. Other workmen or laborers followed to remove the piles of loose material left on the floor of the gangway. Vanesse, the plaintiff, was one of those employed to shovel up this loose material on the floor of the mine; on the afternoon of 5th of July, while shoveling a pile of this stuff on the cars, which

had been left there several days before by those setting timbers, a large piece of coal and slate fell from the side and angle at the top of the gangway, between the timbers, upon him, so seriously crushing his leg that amputation was necessary to save his life. He brought suit for damages against his employer, alleging his injury was caused by the negligence of the company in constructing the gangway, so that it was left in a condition unnecessarily dangerous to workmen and others who might afterwards have occasion to use it, either in working or passing. The plaintiff alleged that it was the duty of his employer to exercise ordinary care in the construction of this gangway, so that there should be as little danger as practicable to the workmen whose duty it was to use it.

The court submitted the evidence to the jury to find whether there was negligence on part of defendant, also whether plaintiff was guilty of contributory negligence in not exercising proper care and vigilance to avoid the danger. Under the instructions, the verdict was for plaintiff.

From the judgment entered on the verdict, the defendant appeals, assigning for error: 1. The refusal of the court to peremptorily direct a verdict for the defendant, because there was no evidence of negligence to submit for the consideration of the jury; and this assignment embraces the second. 3. In charging the jury as follows: " If it had been shown that by looking he could have seen there was imminent danger of this piece of slate falling on him, and he did not look, as he said he did not, it would be sufficient to prevent his recovery; but I recall no evidence that would show that he himself, by inspecting just by a glance at it, could have seen that it was specially dangerous any more than any other piece of slate that was hanging that way."

As to the first assignment, while the evidence of negligence on part of defendant was very contradictory, and to the minds of many, the weight of it would have turned the case in favor of defendant, still it rose much higher than a scintilla in favor of plaintiff. Negligence is absence of care according to the circumstances. What were the circumstances here? The employer was constructing a tunnel or way into his mine, which he knew for years must be used by his miners and workmen, in moving to daylight thousands of tons of coal; above this

gangway, pressing always downward and inward, were hundreds of thousands of tons of rock and earth; the tendency would be, continually, to fracture and loosen the surface of the tunnel at the sides and top, and cause it to fall; and especially would this be the case at the time the timbers were being set, for necessarily, then, the surface of the gangway would be disturbed. The testimony on both sides showed that, in setting the timbers, immediately after they were in place, ordinary care required testing for loose and fractured parts between them, and the knocking of these down; this work of making safe was done under the immediate supervision and orders of defendant's superintendent and general manager, one of the owners of the mine; whatever risk was incident to and taken in that special work by those setting timbers, when that work was completed and they were forty or fifty yards in advance of where the accident occurred, any special risk at that point, it was reasonable to presume, had ended; the gangway there was ready for use. If the loose and fractured pieces of coal, bone and slate, between the timbers, which both sides say care required should be knocked down and taken away as soon as the timbers were set, had not all been removed, then it was for the jury to determine whether it was negligence in defendant to leave undisturbed this piece, the fall of which caused the injury.

The conflicting testimony as to whether plaintiff belonged to the timbering gang, or was working independently in the finished gangway, as a shoveler, forty or fifty yards behind that gang, was clearly for the jury.

Nor does the case turn on the question as to whether defendant's method of timbering and making safe the gangway was the best; there was contradictory evidence as to this; but there was also evidence, mainly inferential it is true, but still of facts which might have warranted the inference, that defendant pursued its own method carelessly in the work of making the gangway safe; that the danger here lurked, not in a latent or hidden defect, but in one easy of ascertainment by those whose duty it was to remove it; that leaving this ton or two of loose material to fall on and crush those who came after was not the result of a mistaken judgment as to method, but of indifference to the consequences of carelessness in carrying out that method. Of

course, we are speaking of the case now in that view of it which is most favorable to plaintiff, a view contradicted by the evidence of defendant in the most material points, and perhaps by the weight of the evidence ; but neither the court below nor we have the right to determine that; it was for the jury to say, not whether the employer had adopted the very best method of constructing a gangway, but whether he had exercised care, according to the circumstances, in providing a gangway which was reasonably safe for his own workmen to work in or pass and repass to their work. We discover no error in submitting the evidence on this question to the jury, and appellant's first assignment of error is not sustained.

As to the second assignment, we appreciate the difficulty of the learned court below in failing to recall any evidence of contributory negligence on part of plaintiff in causing his injury. If he had heedlessly put himself in peril, had stepped under a visible overhanging mass of coal and slate, liable to fall at any time and crush him, that would have been contributory negligence. But the very point fairly made on this evidence by plaintiff was, that this danger was imperceptible to him, while to his employer, whose duty it was to detect it when setting the timbers, it was obvious, or by ordinary care would have become so.

A workman, who sees an apparently safe gangway with new timbers just put in place, knows that, under the eye of his employer, an experienced miner, a gang of workmen have just finished making it safe for him and his fellows, then is commanded by his employer to work in a particular place in it— certainly, before obeying—is not required to enter upon an inspection of the space between the timbers to determine whether those who had, but a short time before, tested it, had performed their duty with care. We see nothing in this assignment calling for further notice.

The cases cited by the learned counsel for appellant are undoubtedly the law ; but his trouble is with the evidence ; the jury did not agree with him as to the verdict which it warranted ; if there was sufficient evidence to warrant it, it does not matter whether we agree with the jury ; it is their business to declare the truth from the evidence, not ours.

The assignments of error are overruled, and the judgment is affirmed.