# Clegg v. Seaboard Steel Casting Company, Appellant.

*Negligence—Master and servant—Vice principal—Fellow servant—Master mechanic—Repairs.*

A master mechanic of a steel works, is a vice principal and not a fellow servant of other employees of the works, where it appears that he has entire charge of the repairs, employs and discharges the repair men, and has the authority to determine, without being required to consult any higher officer, when and what repairs are necessary, and to select his own means for executing his plans.

A vice principal is one to whom the master delegates a duty of his own which is a direct, personal and absolute obligation, from which nothing but performance can relieve him.

*Negligence—Master and servant—Safe place of employment—Vice principal.*

The obligation of a master to furnish to his servant a reasonably safe place in which to work, is a direct, personal and absolute obligation, and if such a duty is delegated to an agent, such agent is a vice principal.

The imperative obligation upon a master to furnish to his servant a safe place in which to work, is not discharged by the master merely by seeing that the working place was safe, when the relation began; he must continuously furnish it, that is, maintain it, in that condition; and the rule extends to the means provided on the master's own premises by which the servant obtains access to his working place.

In an action against a corporation operating a steel works, by an employee, to recover damages for personal injuries, it appeared that the plaintiff fell into an open ditch on the defendant's premises, and was injured. The ditch had been opened over night by the defendant's master mechanic who had entire charge of the repairs of the plant. When the plaintiff was on his way to his work in the morning, he approached the ditch without being aware of its existence. There was evidence on behalf of the defendant that warning of the danger was given by a burning torch. The plaintiff, however, testified that, at the moment he passed, no such light was visible, either because the torch was not then actually burning, or because its light was swallowed up in, and obscured by, the clouds of steam and fog then rolling along the surface of the ground. *Held*, that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

*Negligence—Judgment—Wrong reason for rightful conclusion—Motion for judgment n. o. v.*

Where the court refuses a motion for judgment non obstante veredicto, and in its opinion gives a wrong reason for a rightful conclusion,

and it appears that there is no trace of the erroneous view in the record of the trial, nor that it was in any way productive of the verdict that was rendered, the appellate court will not reverse the judgment because of the wrong reason thus given.

Argued Nov. 23, 1906. Appeal, No. 224, Oct. T., 1906, by defendant, from judgment of C. P. Delaware Co., Sept. T., 1904, No. 184, on verdict for plaintiff in case of Albert Clegg v. Seaboard Steel Casting Company. Before Rice, P. J., Porter, Henderson, Morrison, Orlady and Head, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Johnson, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,033.33. Defendant appealed.

*Errors assigned* were (1) in not giving binding instructions for defendant; and (2) in not entering judgment for defendant non obstante veredicto on the whole record.

*Wm. I. Schaffer*, for appellant.—The plaintiff was an employee at the time of the injury: Labatt on Master and Servant, 1822; Ewald v. Chicago, etc., R. R. Co., 70 Wis. 420; McGuirk v. Shattuck, 160 Mass. 45 (35 N. E. Repr. 110); Helmke v. Thilmany, 107 Wis. 216; Walbert v. Trexler, 156 Pa. 112.

If the plaintiff was not a servant at the time of the accident, then the defendant owed him no duty. If he was in the works at a reasonable hour, he was a servant and is subject to the co-employee rule: Walbert v. Trexler, 156 Pa. 112.

A master is not bound to indemnify one servant for injuries caused by the negligence of another servant in the same common employment as himself, unless the negligent servant was the master's representative: 2 Labatt on Master and Servant, p. 1304; Casey v. Penna. Asphalt Paving Co., 198 Pa. 348.

In order to constitute one a vice principal, he must have general power and control over the business and not mere authority over a certain class of work or a certain gang of men:

Labatt on Master and Servant, sec. 519, p. 1437; New York, Lake Erie & Western R. R. Co. v. Bell, 112 Pa. 400; Duncan v. A. & P. Roberts Co., 194 Pa. 563.

Under the doctrine of Prevost v. Citizens' Ice & Refrigerating Co., 185 Pa. 617, which is the leading authority in the United States on the second branch of the vice principal doctrine, no vice principalship was shown in this case: Bemisch v. Roberts, 143 Pa. 1; Durst v. Carnegie Steel Co., 173 Pa. 162; Labatt on Master and Servant, sec. 612 a; Filbert v. D. & H. Canal Co., 121 N. Y. 207; Hurley v. Lukens Iron & Steel Co., 186 Pa. 187; Auburn v. Tube Works Co., 14 Pa. Superior Ct. 568; Ingram v. Lehigh Coal & Nav. Co., 148 Pa. 177.

The leaving open of trapdoors by employees as a result of which other employees are are injured will not permit of a recovery against the employer: Pawling v. Hoskins, 132 Pa. 617.; Clough v. Hoffman, 132 Pa. 626.

*A. B. Geary,* for appellee.—Witsil had complete and absolute charge of all repairs and the accident was caused by failure to perform the absolute duty of the defendant to furnish the plaintiff with a safe place to go to and from his work: New York, etc., R. R. Co. v. Bell, 112 Pa. 400; Prevost v. Ice, etc., Co., 185 Pa. 617; Mullan v. Steamship Co., 78 Pa. 25; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Lewis v. Seifert, 116 Pa. 628; Prescott v. Ball Engine Co., 176 Pa. 459.

The duty to keep the pathway along which the workmen traveled free from obstructions, or have the same guarded, was a duty of the appellant which was a direct, personal and absolute obligation from which nothing but performance could relieve it: Hoffman v. Clough, 124 Pa. 505; Wannamaker v. Burke, 111 Pa. 423; Johnson v. Bruner, 61 Pa. 58; Lewis v. Seifert, 116 Pa. 628; Prevost v. Ice, etc., Co., 185 Pa. 617; Casey v. Penna. Asphalt Paving Co., 198 Pa. 348; Finnerty v. Burnham, 205 Pa. 305; Lillie v. American Car & Foundry Co., 209 Pa. 161; Lininger v. Westinghouse Air Brake Co., 210 Pa. 62; Schiglizzo v. Dunn, 211 Pa. 253; New v. Milligan, 27 Pa. Superior Ct. 516; Weller v. Aberfoyle Mfg. Co., 28 Pa. Superior Ct. 102.

This includes a reasonably safe pathway to walk in going to and from the shop where he is employed: Payne v. Reese, 100

Pa. 301 ; Vanesse v. Catsburg Coal Co., 159 Pa. 403 ; Baird
v. Pettit, 70 Pa. 477.

OPINION BY HEAD, J., October 7, 1907 :

In his charge to the jury the learned trial court stated most
of the material facts on which the plaintiff's claim was based,
and the two questions as to which the defendant craved special
instructions, in the following language, viz.: " It appears that
on December 3, 1902, this plaintiff, who was an employee of
the Seaboard Steel Casting Company, was going to his work
in the morning somewhere near 7 o'clock, quarter 'before 7,
or somewhere about that time, and while passing over the
route, the usual route I think he said he took, he slipped into,
or fell into this ditch. It appears that on the day before, there
being something the matter with the steam that heated one of
the departments of this establishment, a ditch was dug along
the line of the steam pipe to ascertain a leak, and near this
pathway over which the plaintiff traveled, an opening was
left which had been dug, he said, four or five feet long.
Some of the other witnesses say ten or twelve feet long and
about fifteen or eighteen inches wide. He says that on this
morning he was passing along this pathway and when he got
to what has been termed the corner of the scrap pile where he
turned short around to the left, he there stepped into this
ditch. The great battle has been fought here over two ques-
tions : First, whether the plaintiff did exercise due and rea-
sonable care; and next, whether the defendant did all that it
was reasonable it should do under the circumstances ? " The
court concluded that both of these questions were questions of
fact and submitted the whole case, on both branches, to the jury.

The learned counsel for the defendant did not then contend
and does not now argue that the court should have declared,
as matter of law, that the plaintiff was guilty of contributory
negligence. The evidence on this point was conflicting.
There was indeed very strong and persuasive testimony from
which the jury might well have reached a different conclusion
on this question, and the tenor of the general charge and the
answer to the defendant's first point show that the trial court
was duly impressed by it. But that court had no right, nor
have we any, to usurp functions which, from time immemorial,

the law has committed to another tribunal. We may there-
fore dismiss this subject without further consideration.

By its second point the defendant asked the court to hold,
as matter of law, that "the negligence in this case, if any, was
that of a coemployee of the plaintiff, and the plaintiff, there-
fore, is not entitled to recover." This was refused for the
reason that "to affirm that point would be to take the case from
the jury. . . . It is a question for you whether, under all the
circumstances, the verdict shall be or shall not be for the de-
fendant."

Here was a distinct specific request for the application by
the court to the case, as it then stood, of the well-established
rule of law " which holds that the master is not responsible for
an injury received by an employee caused by the negligence of
a coemployee or fellow workman." Here we may pause to
observe that it is obvious this point of the defendant, the only
one inviting a ruling on a distinct legal proposition, necessarily
assumed as a fact in this case, that the plaintiff, at the time of
his injury, was an employee of the defendant. The court re-
fused the point, not because of any question as to the relation
then existing between the parties, but for the reason quoted.
The only point presented by the counsel for the plaintiff him-
self, and the answer thereto, clearly indicate that both counsel
and court regarded it as an undisputed fact in the case that the
plaintiff was in the service of the defendant. The only refer-
ence made to this question in the general charge is in the open-
ing sentence already quoted where the plaintiff is called " an
employee." It seems clear, therefore, to us that throughout
the trial the case proceeded on the assumption, unquestioned
by anybody, that the relation of the parties, at the time of the
plaintiff's injury, was that of master and servant, and the ver-
dict of the jury, on the questions of fact submitted, cannot now
be fairly said to have been induced or in any way influenced,
by any different idea of that relation that later was suggested
to or adopted by the court below. The significance of these
remarks we will refer to later on and now return to a consider-
ation of the question raised by the second point and the an-
swer thereto. This will involve the statement of some addi-
tional facts. It is of course conceded that the place where the
accident happened was within the premises and plant of the de-

fendant, the path, along which the plaintiff was then traveling, leading from the main entrance to the pattern shop where he was employed. The obligation of his service required the plaintiff to be at his post prepared to begin work at seven o'clock. He had reached the plant about eighteen minutes before that hour and the accident occurred at approximately ten minutes later.

The repairs to the buried steam pipe which necessitated the opening of the ditch, into which the plaintiff stepped at the turn of the path, had been ordered by one Witsil. They were begun the day before the accident and were conducted under his personal supervision, although there was a foreman in immediate charge of the men. Witsil describes in his testimony how the work was done, and admits that they left a section of the ditch unfilled about twelve feet long. Who was Witsil? What were the nature and extent of his authority? Did he occupy towards the plaintiff the relation of a fellow-servant or a vice principal? He was the master mechanic of the defendant, and in his own testimony, not contradicted, we find the following:

" Q. I am asking you what are your general duties at the Seaboard? A. As.chief engineer and as master over all the works of all work pertaining to the work. Q. Do you mean repair work? A. Repair work. Q. You have charge of all the repair men, have you? A. Yes, sir. Q. And hire and discharge them? A. Yes, sir."

From this testimony it may be fairly deduced that as to one important branch of the defendant's business, the keeping of its plant and machinery in a state of efficiency and repair, Witsil was invested with the full authority of his principal. He appears to have determined, without being required to consult any higher officer, when and what repairs were necessary. and to have selected his own means for executing his plans. Doubtless he was responsible to his superiors for the results obtained, but there is no evidence from which a jury could find that within his sphere of action his work was regulated by any discretion or oversight but his own. This would bring him within the first branch of the definition of a vice principal announced by Mr. Justice MITCHELL in Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617.

But, according to the second branch of the same definition, a vice principal is also " one to whom he (the master) delegates a duty of his own which is a direct, personal and absolute obligation, from which nothing but performance can relieve him." The obligation of a master to furnish to his servant a reasonably safe place in which to work is such direct, personal and absolute obligation, " and while the master may delegate these duties to an agent, such agent stands in the place of his principal: " Lewis v. Seifert, 116 Pa. 628. We need hardly add that this imperative obligation to furnish to his servant a safe place in which to work could not be discharged by the master merely by seeing that the working place was safe when the relation began. He must continuously furnish it, that is, maintain it in that condition. The same reason that supports the rule requiring the master to keep reasonably safe the place in which his servant actually performs his work, would necessarily extend the rule to the means provided on his own premises, by which the servant obtains access to his working place. . It would be absurd to say that a factory owner performed his duty by providing and maintaining a safe place for his operative to work on the fifth floor of his building if, at the same time, he permitted the stairway, by which his employee reached it, to get into such a condition as to become a menace to the lives and limbs of those using it ; or that a mine owner, after providing a safe room in which his miner could work, could, without liability, fail to protect and secure the gangway, by which that room was reached. That our law furnishes no foundation for any such conclusion is abundantly established in Vannesse v. Catsburg Coal Co., 159 Pa. 403 ; Payne v. Reese, 100 Pa. 301, and kindred cases. It was the duty of the defendant, therefore, to keep the pathway on which the plaintiff was traveling, at the time of the accident, reasonably safe. If the master, in the course of his business, were required himself to make the working place, or the approach thereto, temporarily unsafe, his plain duty would be to provide such notice and warning of that condition that no reasonably careful servant could suffer therefrom.

If the defendant failed to discharge that duty it cannot escape responsibility because it selected Witsil to do the work. In such a case, as we have seen, the agent selected is regarded

as a vice principal and the master must answer for his negligence : Lewis v. Seifert, 116 Pa. 628. We are unable to discover, therefore, that the defendant has any just ground of complaint because the court refused to affirm its second point, but permitted the jury to find, on the uncontradicted testimony of Witsil himself, that his relation to the plaintiff was that of a vice principal.

Was the act of the defendant in leaving this open ditch alongside the pathway, traveled by its employees, an act of negligence ? Certainly it was not negligence per se. The master had the undoubted right to make necessary repairs. But if in doing so he rendered unsafe the pathway of his servant, the exercise of the right created the consequent duty either of barricading the dangerous opening or giving timely notice of its existence by lights or other notice calculated to warn the traveling employee. Here again we have a serious conflict in the evidence. Whilst there is strong testimony that warning of the danger was given by a burning torch, the plaintiff positively asserted that, at the moment he passed, no such light was visible, either because the torch was not then actually burning or because its light was swallowed up in and obscured by the clouds of steam and fog then rolling along the surface of the ground. In this case, however, the fact that the plaintiff saw no danger in the presence of the steam does not necessarily bring his conduct within the lines of the criticism made, of somewhat similar conduct, by Mr. Justice GORDON in Payne v. Reese, 100 Pa. 301, because the plaintiff testified that under the atmospheric conditions existing on that morning, it was no unusual thing to find the steam from the main exhaust of the plant, unable to rise through the heavy air, clinging to the earth awaiting more favorable conditions. The court, therefore, was obliged to submit to the jury the question whether or not the defendant had given proper and reasonable warning of the existence of the danger it had created.

The record of the trial which we have thus gone through, step by step, clearly shows that, under a proper submission, a jury has found in favor of the plaintiff every fact necessary to establish his right to recover from the defendant, regarding the latter solely in the light of an employer, the former in that of an employee. What remains ? After the verdict the defend-

ant moved for judgment, notwithstanding the verdict, under the act of 1905. Clearly no such judgment could be legally entered unless, at the conclusion of the trial, the court should have given binding instructions for the defendant. We have endeavored to show that the record of the trial discloses no warrant for any such action on the part of the court, and the motion was properly denied. It is true that in the last paragraph of his opinion refusing the motion the court below said: "The accident happened before the plaintiff's employment had begun for that day, therefore, he was not a fellow servant with any of the persons ordered to do the digging of the excavation or leave it uncovered." This position is vigorously assailed by the able counsel for the appellant. Did the validity of the judgment appealed from depend on the soundness of this propposition, we might find grave difficulty in affirming it. But why should we reverse the judgment and send the case back to be retried for what is, in substance and effect, nothing more than a wrong reason for a rightful conclusion? Were we to do so the case might be tried exactly as it was before and we would find no error in the record for the reasons we have fully given. And this is manifestly so because no trace of this erroneous view of the court, assuming it to be such, appears in the record of the trial, nor can we discover the slightest indication that it was, in any way, productive of the verdict that was rendered. As we have shown, the case was actually tried on the theory now contended for by the appellant, and we would accomplish nothing by ordering it to be tried again on the same theory. The assignments of error are, therefore, dismissed.

Judgment affirmed.