# King *v.* McClure Company, Appellant.

*Negligence—Master and servant—Fellow servant—Vice principal—Safe place of employment.*

In an action by a workman against his employer to recover damages for personal injuries sustained while helping to put in place a heavy piece of machinery, the plaintiff is not entitled to recover where it appears that the place where the accident occurred was perfectly safe, and that the accident was due to the negligence of a master mechanic who directed the placing of the machine and participated with the plaintiff and other workmen in the performance of the work.

It is the character or nature of the act of the employee which causes the injury that determines the liability of the employer. If the act or thing done resulting in the injury to the employee was a duty imposed upon the employer, then the negligent performance of it by an employee of any grade, will render the employer liable, but if such act was in the line of the ordinary workman's duty as an employee, then the employer is not responsible, though the offending employee was a vice principal in charge of the work generally.

VOL. CCXXII—40

There is no rule of law which requires an employer by himself or representative, to be always present to ward off every transient peril. Per STEWART, J.

Argued Oct. 15, 1908. Appeal, No. 17, Oct. T., 1908, by defendant, from judgment of C. P. Washington Co., Feb. T., 1907, No. 316, on verdict for plaintiff in case of E. W. King v. The McClure Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McILVAINE, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $3,342. Defendant appealed.

*Error assigned* was in giving binding instructions for defendant.

*John H. Murdoch,* with him *Edgar B. Murdoch,* for appellant.—We think it was clearly the duty of the court in this case to determine, without reference to the jury, whether or not Johnson was a vice principal: Vant v. Roelofs, 217 Pa. 535.

It is the duty of the master to provide his servants with a safe place in which to work; having done this his whole duty is performed: Ricks v. Flynn, 196 Pa. 263; Casey v. Paving Co., 198 Pa. 348; Ross v. Walker, 139 Pa. 42; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Miller v. American Bridge Co., 216 Pa. 559.

*James P. Eagleson,* for appellee, cited: Ricks v. Flynn, 196 Pa. 263; Hughes v. Leonard, 199 Pa. 123; Butterman v. Construction Co., 206 Pa. 82; Geist v. Rapp, 206 Pa. 411; Lillie v. American Car & Foundry Co., 209 Pa. 161; Schiglizzo v. Dunn, 211 Pa. 253; Weller v. Mfg. Co., 28 Pa. Superior Ct. 102; Gilber v. Elk Tanning Co., 221 Pa. 176.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

The plaintiff received his injuries while assisting other work-

men in the employ of the defendant company to put in place
a large iron roller, a necessary part of the machinery in a tin
plate mill, which had been temporarily removed for purposes
of repair. The roller, by means of a crane from which it was
suspended, had been swung into a position where all that re-
mained to be done was to place the spindles at either end of
the roller in their bearings or housings. As then suspended
from the crane, the roller was immediately over a hole or pit
some two or three feet lower than the floor surface of the build-
ing. The bearing or housing at one side was fixed and per-
manent; the other was movable and adjustable. The latter
was so placed that it was not necessary to elevate the end
of the roller to obtain insertion of the spindle in it; but ele-
vation of the roller was necessary in order to rest its spin-
dle in the fixed bearing. The end next the movable bear-
ing was released from the crane and so much of the roller was
allowed to rest upon an iron bar or rail laid across the pit.
Unfortunately—and this is the negligence charged—the iron
bar or rail instead of being placed at the end of the pit where
simply the released end of the roller would have rested on it,
was placed about the middle, with the result that when the
other end of the roller was being elevated so that its spindle
might be inserted in its bearing, the weight of the roller was
applied rather to the side of the rail, and this lateral pressure
forced the rail back along the walls of the pit on which it rested
to where the plaintiff was standing in the pit, guiding the end
that was being elevated. The rail caught his leg while he was
attemping to escape, and crushed it. The work of putting the
roller in place was done under the direction of a workman
named Johnson, who was a master mechanic, and who was
himself assisting in the work. The jury found Johnson to be
a vice principal, and we are required to so regard him. In our
statement of the facts we have indicated the negligent act; it
was the placing of the iron rail on which the roller was allowed
to rest nearer the middle than the end of the pit; this was the
sole cause of the accident; and the sliding of the rail from the
pressure of the weight of the rolls as one end was being elevated
was a result which ought to have been foreseen. What had

Johnson, the master mechanic or foreman, to do with this, as vice principal? Suppose it was his own hand that put the rail where it was; and assume further that he was negligent in attempting to lift into place one end of the roller with the other end no better secured than it was; and that this negligence contributed to the accident; how can either of these considerations impose liability upon this defendant? Johnson was vice principal only in the sense that duties were delegated to him which were a personal and absolute obligation resting on the employer. It is not pretended that his control of the particular department in his charge was so absolute as to be independent of the oversight and direction of his employer. He was under direction of a manager and superintendent of the mill. The only duty delegated to him which we are called upon to consider here was the duty to provide a reasonably safe place for the workmen in which to do their work; no other is involved. Did he do this, as vice principal? Or rather was there any evidence in the case which would warrant the inference that he had failed in this regard? If none, it follows that liability for the accident was improperly imposed on the employer. There is not a suggestion or hint in the evidence, the charge of the court, or the argument by counsel for the appellee that the place where the plaintiff received his injuries was unsafe when he went to occupy it, which must have been within an hour at most of the accident. Undoubtedly the obligation remained on the vice principal to maintain the place in a condition of safety so long as the workmen were there employed. But in no respect whatever, so far as regards those physical features which the employer is bound to provide and look after for the safety of his workmen, is there even the slightest change shown to have occurred. The place remained safe except as the workmen there employed were exposed to the dangers necessarily incident to the kind of work they were doing. It was in connection with this feature of the case that the mistaken view prevailed to sustain the verdict. We quote from the opinion filed by the learned trial judge in overruling the motion for judgment non obstante. "The duty was upon him (the vice principal) to assign him (the plaintiff), a place to

work that was not only reasonably safe but that would continue to be safe until the roller was in position in the housing at either end. There was evidence which if believed tended to establish the plaintiff's contention that Johnson made the place in which the plaintiff was assigned to work unsafe and against the protest of the plaintiff, and made it unsafe so suddenly that he did not have time to escape. The true meaning of the rule that the employer must furnish the employee a safe place to work, is that the place is to be safe until the work he is assigned to do is complete or finished in the manner that the employer or his agent plans to have it done. The plaintiff when he first took his position had a right to presume that the work would be done so that the place in which he worked would not become dangerous, but Johnson, the agent of the employer, directed the work so that the place where the plaintiff was did become not only dangerous, but the dangerous situation was so suddenly created by Johnson that the plaintiff did not have time to save himself from the danger. This logically was the same as giving the plaintiff originally an unsafe place in which to work. . . . We recognize the fact that Johnson was working with the plaintiff, King, to accomplish a common purpose and that they were fellow-workmen, and that the negligent act done or caused to be done by Johnson was his personal negligence, yet there was in our opinion sufficient evidence to submit the question to the jury whether or not he was a vice principal when he did that act." The error here is in attributing the accident to the place. Of course, the plaintiff would not have been injured as he was if he had not been in the place where the work was being done. Nor would the man who received a hurt from a falling brick as he walked along the pavement have been injured in that way had he stayed at home. In the latter case, the accident would certainly not be referred to the pavement which in no way contributed to the injury. Why then should plaintiff's injury be referred to the place where he was working, when the established proximate cause of the accident was a human agency wholly unrelated to the place, except that it happened there to be operated? Is it any answer to say that the place was

made dangerous because of the manner in which Johnson was directing the work? Admitting that he employed a dangerous method, that circumstance in no way indicates any insufficiency in the place itself as a contributing element. The plain, unmistakable fact—we are speaking of what was found by the jury—is that Johnson's negligence was the proximate cause of the accident. It is just as clear that no reasonable provision in the way of protection to the workmen in connection with the place itself was omitted. Now was Johnson acting in the line of his vice principalship when directing how the work was to be done and assisting in it himself? The duty delegated to him was to provide a reasonably safe place, and to see that it was maintained in that condition. This he did. As to everything else he was a fellow workman with the plaintiff. Neither of the specific acts which, because improperly done, are to be considered as having produced the accident—the placing of the iron rail beneath the rollers and the hoisting of the end of the roller to its bearing—was within the personal duty of the employer; they were matters of detail in the execution of the work. There is no rule of law which requires the employer, by himself or representative, to be always present to ward off every transient peril. The learned trial judge, in the opinion from which we have quoted, recognized that Johnson was working with the plaintiff to accomplish a common purpose; that they were fellow workmen, and that the negligent act done or caused to be done by Johnson was his personal negligence. These facts appearing, as they unquestionably do, were sufficient to defeat the plaintiff's cause of action. The law governing cases of this kind is nowhere more clearly and concisely stated than in Ricks v. Flynn, 196 Pa. 263, where our Brother MESTREZAT thus expressed it: "It is the character or nature of the act of the employee which causes the injury that determines the liability of the employer. If the act or thing done resulting in the injury to the employee was a duty imposed upon the employer, then the negligent performance of it by an employee of any grade, will render the employer liable, but if such act was in the line of the ordinary workman's duty as an employee, then the employer is not responsible, though the

offending employee was a vice principal in charge of the work generally." To the same effect is Casey v. Paving Company, 198 Pa. 348, and Miller v. American Bridge Company, 216 Pa. 559. We are of opinion that it was an error to refuse the motion for judgment non obstante. It is unnecessary to consider the other assignments.

The judgment is reversed, and it is ordered that judgment be entered in the court below for the defendant non obstante veredicto.