Opinion it
Orlady, J.,
The plaintiff received injuries from a fall of roof in the defendant’s coal mine, which necessitated the amputation of one leg above and the other below the knee, and recovered before a jury a verdict for $1,000.
It is urged by the appellant that the view taken by the trial judge was erroneous, as to the sufficiency of the evi *588 dénce, in regard to the defendant’s negligence in not providing a safe place for the plaintiff to do his work, and as to the relation the plaintiff held to the defendant at the time of the accident.
The plaintiff was an experienced coal miner, and had been working for the defendant for three weeks prior to the accident, in operating a cutting machine. He was assigned to work on a “break through” between two parallel entries. This “through” was about fifty feet in length, seven feet in height, and nine feet in width, and was within a foot or two of being completed when the accident occurred.
The mine was nominally in charge of Edward Drum as superintendent, Charles Butler as mine foreman, and the work in which the plaintiff was engaged was in charge of Vasil Skirpen, who was employed by the defendant under an oral contract, by which he received $4.00 per lineal yard for certain completed entries. He employed and discharged at will the men doing the work under him, directed them where to work as designated by Drum or Butler, or as stated by him, “I was to do all the telling to the men, what they were to do. Drum gave me the orders.” Drum was in the mine occasionally, gave the orders to Skirpen, who saw that they were carried out. Skirpen was directly employed by the defendant and was liable to be discharged at any time, as stated by him. “If I don’t do right they can fire me at any time.” He had no tools or equipment of his own. Butler measured up the work each night, and at the end of the pay term, Skirpen received from the company in money the amount due him under his contract, and he in turn left the wages due to each of his laborers at a store, where each received his separate portion. The evidence was sufficient to warrant the jury in finding that Skirpen was the representative of the mine owner, though acting through Drum— doing his work at places indicated by Drum or Butler, and was intrusted with the direction and control of the men employed by him, as well as the manner of doing the work.
Unless the defendant was exempt from liability by *589 having such a mine foreman as is required by the Act'of May 15, 1893, P. L. 61, it was its bounden duty to furnish a safe place to the plaintiff in which to do his .work; that this duty could not be delegated to anyone and thus avoid liability; that nonperformance of this duty was negligence per se, and that the rank or title of the servant who neglects this duty is not material; if the act or thing done, resulting in the injury to the employee, was a duty imposed on the employer, then the negligent performance of it by an employee of any grade, would render the employer liable.
The character of Skirpen’s employment was fairly, left to the jury to determine, and the verdict establishes the fact, that, as to the work being done on this cut-through, Skirpen was an agent or vice principal of the owner, and that whatever Butler’s relation may have been to the other work in the mine, the company relieved him of this branch of the work, and put Skirpen in personal control of the special work he was doing, as well as of the men employed by him.
When Drum as superintendent delegated his duty as well as that of the mine foreman to Skirpen, he made the latter a vice principal of the operation under authority of Lewis v. Seifert, 116 Pa. 628; Shank v. Elect. Ill. Co., 225 Pa. 393; Mapes v. Pittsburg Provision & Packing Co., 31 Pa. Superior Ct. 453; Clegg v. Casting Co., 34 Pa. Superior Ct. 63; Ricks v. Flynn, 196 Pa. 263; King v. McClure, 222 Pa. 625.
While not called by name, a manager, superintendent or foreman, he was undoubtedly “another person” selected by the mine owner, and placed in charge and control of part of the work, and, as such, was an agent of the employer under the provisions of the second section of the Act of June 10, 1907, P. L. 523, so that it is immaterial whether Skirpen would be held to be a fellow servant under decisions rendered prior to that legislative declaration. Nor does the manner of paying for his service determine the •character of his relation to the plaintiff... That was purely *590 a business arrangement to secure services from employees who could not speak our language, and were not familiar with our money, customs or mine regulations.
On the trial the plaintiff, and each of his witnesses required an interpreter to translate his testimony. In the mine Skirpen supplied this deficiency on the part of the laborers in carrying out the directions of Drum and Butler. The court could not declare the relation of Skirpen to the defendant as matter of law, and fairly and properly left it to the-jury to determine whether or not the company, having the full complement of officers, by name at least, required by the bituminous mining Act of 1893, P. L. 52, delegated to Skirpen, through Drum, the doing of its work, and whether he was such an agent of the common employer as is contemplated by the act of 1907, or a vice principal in charge and control of a particular department of the mine workings.
The roof of the mine is described as “slick top,” smooth sandstone, in which there were crevices, through which water trickled in such quantity as to make an inspection difficult and uncertain. The piece which fell was seven or eight feet long, five or six feet wide, and about two feet thick at its heaviest part. The plaintiff did not complain of the place in which he worked, because he did not suspect the danger, though two others notified Butler the day before that it was a bad roof and dangerous, and when Skirpen was told that “it was an awful bad place,” he replied, “Let it be, that it would only go about one cut or two and it would be through.” There was evidence to show that the day before the roof was leaking badly, and it was contended that had there been a proper inspection of the roof at that time, the defect would have been discovered and remedied by props. That there were no posts available to the miners to support the doubtful roof even had they known of its defect. While a shot was put off about one-half hour before the roof fell, there was no evidence of unsound rock by reason of the noise made by the falling water which made the tests doubtful. *591 Whether the plaintiff observed the requirements of the mine laws was a disputed question and was fairly submitted to the jury. It clearly appears that Butler, the mine foreman, did not confine himself to the duties specified by the Act of May 15,1893, P. L. 52, 61, “to devote the whole of his time to his duties at the mine when in operation, or in case of necessary absence, by an assistant chosen by him.” He visited the mine at irregular intervals, looked around, talked to the men, but did not make any soundings or tests in this entry, and considered it a perfectly safe place to work it.
Independent of his statutory duty, he measured up the work in the mine and reported it to the company. He defines his relation as follows, “I am employed by the company. I am supposed to do what they tell me. I am for the company, sure.” Such a construction of his duty would well warrant the jury in finding that he was but the representative of the mine owner.
This case was heard March 24, 1911, so that the provisions of the Act of June’ 15, 1911, P. L. 983,. have no application.
The trial was conducted with exceptional ability and fairness, and on review of the whole record we. do, not find any reversible error.
The judgment is affirmed.